IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| CASH BURCH,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WATERLOO, JORDAN EHLERS, LUCAS SCARBROUGH, and ADAM GALBRAITH,<br><br>Defendants. | Case No. 19-CV-2035-LTS<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

COME NOW Defendants, City of Waterloo, Jordan Ehlers, Lucas Scarbrough, and Adam Galbraith, by and through their undersigned counsel of record, and for their Memorandum of Authorities in Support of their Motion for Summary Judgment state:

SUMMARY OF THE FACTS

On June 21, 2017, Plaintiff Cash Burch was involved in a traffic stop from which the underlying lawsuit arose. Prior to this traffic stop, Investigator Nicholas Berry of the City of Waterloo Police Department spoke with a cooperating source who told him that they observed Burch with methamphetamine numerous times over the past several days. App. 009. The cooperating source told Investigator Berry that Burch was obtaining and distributing meth to several drug customers in the surrounding area. App. 009-10. Local law enforcement, including Investigator Berry, were aware of Burch's involvement in the distribution of methamphetamine in the Waterloo-Cedar Falls area over the previous several years. App. 009. The same cooperating source also said that Burch was operating a black BMW with paper license plates. App. 009-10.

Investigator Berry conducted surveillance on Burch on June 21, 2017. App. 010. The cooperating source told Investigator Berry that Burch would be at the Isle Casino in Waterloo to

1

purchase methamphetamine. *Id.* Investigator Berry observed Burch leave the Isle Casino, get into a black BMW with no license plates, and leave the area. *Id.*

Investigator Berry followed Burch as he traveled on Washington Street. *Id.* As Investigator Berry followed him, Burch's driving became erratic. *Id.* Burch repeatedly turned his head and looked back at the vehicles following him. *Id.* As the two vehicles approached the intersection of Washington Street and Mitchell Avenue, Investigator Berry was directly behind Burch's vehicle. *Id.* Both vehicles were in the right lane when Burch signaled and changed lanes in the middle of the intersection. *Id.* Burch then travelled approximately 100 yards before abruptly making another lane change—this time without a signal. *Id.* After the officers passed Burch at the intersection for Hawthorne Street, Burch crossed a solid white lane line to enter into the left turn lane. *Id.* Burch entered back into the lanes of traffic for Washington Street and proceeded on Washington Street. *Id.*

Soon thereafter Investigator Berry contacted Officer Jordan Ehlers. App. 004 & 010. Investigator Berry told Officer Ehlers that he suspected Burch was in possession of drugs and informed Officer Ehlers of the numerous traffic violations which he observed. *Id.* Officer Ehlers was also told by Investigator Berry that he suspected that Burch had recognized the investigators' vehicles or the investigators. *Id.* Investigator Berry asked Officer Ehlers to make a traffic stop. *Id.* A local criminal history check by Officer Ehlers indicated that Burch had a caution for escape risk and a history of eluding officers and drug possession. App. 005.

The traffic stop was initiated at approximately 6:19 p.m. on Highway 218 and Williston Avenue in Waterloo. *Id.* Although Burch pulled to the side of the road, his vehicle continued to slowly roll forward approximately 30 seconds before coming to a complete stop. *Id.* Burch's foot remained on the brake when Officer Ehlers approached the driver's side at approximately 6:20

p.m. *Id.*; *see* App. 039, DVR No. ZZHDBW28 at 18:21:03. Officer Ehlers asked Burch for his driver's license, registration, and insurance. App. 005; *see* App. 039, DVR No. ZZHDBW28 at 18:21:15. Burch did not have proof of insurance. App. 005.

At approximately 6:25 p.m. Officer Ehlers went to his patrol car to complete a warning for failure to signal when making a turn and a citation for Burch lacking insurance. App. 006; *see* App. 039, DVR No. ZZHDBW28 at 18:25:16-18:41:00. Officer Lucas Scarbrough maintained a visual on Burch. App. 001 & 006; *see* App. 039, DVR No. ZHDBW30 at 18:25:23-18:41:12. Both officers thought Burch appeared anxious. App. 001 & 005. Officer Scarbrough observed Burch fidgeting with his phone; clicking in and out of apps with no purpose. App. 001. Burch was also filming and taking photos of Officer Scarbrough. Officer Scarbrough asked him to stop, but Burch declined to do so. *Id.*; *see* App. 039, DVR No. ZHDBW30 at 18:28:19-18:28:55. No adverse action was taken by Officer Scarbrough for this refusal. App. 001; *see* App. 039, DVR No. ZHDBW30 at 18:28:19-18:28:55.

At approximately 6:41 p.m., Officer Ehlers returned to Burch with the written warning and the citation. App. 006. Officer Ehlers asked Burch to exit his vehicle to review the paperwork. App. 002. Burch refused to get out of his vehicle. App. 006. Officer Ehlers repeated this request at least four times. *Id.* Burch refused each time. *Id.*

Burch began rolling up his window after his final refusal. *Id.* Officer Ehlers opened the driver's side door and again instructed Burch to get out of the vehicle. *Id.* At this point Burch put his foot on the brake and reached for the shifter in the center console. *Id.* Officer Ehlers responded by placing his hand on Burch and grabbing the keys out of the ignition. *Id.* Officer Ehlers then threw the keys and began pulling Burch out of the vehicle. *Id.* As he did so, Burch pulled a clear

3

plastic bag with a white substance out of the crotch area of his pants. *Id.* Officer Ehlers recognized the substance as meth. *Id.* Burch put the meth in his mouth and began chewing. *Id.*

Officer Ehlers realized that Burch was trying to eat the meth. *Id.* Officer Ehlers believed Burch put approximately half an ounce into his mouth. *Id.* From his training and experience, he knew this amount could cause a lethal overdose if ingested at once and potentially lead to Burch's death. *Id.*

Burch continued to resist as Officers Ehlers and K-9 Unit Officer William Herkleman—who had arrived shortly before—began pulling him out of the vehicle. *Id.* Once Officer Scarbrough unbuckled Burch, Officers Ehlers and Herkleman placed him on the ground. App. 002. Burch never stopped resisting the officers' commands and never stopped chewing the meth.

Once Burch was on the ground, the officers could hear him chewing on the meth in his mouth. App. 002 & 006. In response to Burch's ingestion of the meth and his continued resistance, Officer Ehlers deployed a short burst of pepper spray to Burch's face. App. 007. This caused Burch to gag, but he did not spit out the meth. *Id.*

It did not stop Burch from resisting either. At 6'1" and approximately 215 pounds, Burch was larger than all of the officers at the scene. *Id.* Burch continued to pull his free hand towards his waist band. *Id.* Officer Ehlers struck Burch in the side with a closed fist to try and gain control of Burch but Burch continued to resist. *Id.* He then deployed his pepper spray a second time on Burch to attempt to prevent him from swallowing the meth and stop him from resisting. *Id.* This second burst was successful and the officers were able to get control of Burch and in handcuffs. App. 002 & 007. When the officers lifted Burch up his penis was sticking out the top of his shorts. *Id.* It is common for individuals such as Burch to hide contraband, like meth, in their crotch area. *Id.*

4

Burch was placed on the curb while the officers waited for an ambulance. *Id.* He began chewing the substance in his mouth again. *Id.* Officer Scarbrough placed Burch on his side and told him to spit it out. Instead Burch swallowed the substance. *Id.* Burch then opened his mouth, and nothing was visible. App. 002, 007-08.

Burch was transported to Covenant Medical Center after this incident. App. 011. Although he was treated for minor abrasions, his condition worsened because of his ingestion of meth. App. 034-38. As part of the large investigation into drug distribution in the Cedar Valley, a discretionary decision was made not to charge Burch in connection with the June 21, 2017 traffic stop. App. 011.

## DISCUSSION

I. STANDARD OF REVIEW ON SUMMARY JUDGMENT.

Rule 56(a) of the Federal Rules of Civil Procedure permits a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643, F.3d 1031, 1042 (8th Cir. 2011) (en banc) (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant meets this initial burden a non-movant must set forth specific facts which show there is a genuine issue for trial in order to avoid summary judgment. *Id.* A reviewing court views the fact presented on summary judgment in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

II. **BURCH'S CLAIMS UNDER SECTION 1983 MUST FAIL BECAUSE THE DEFENDANTS DID NOT VIOLATE BURCH'S CLEARLY ESTABLISHED CONSTITUTIONAL OR STATUORY RIGHTS.**

The majority of Plaintiff Cash Burch's claims were brought under 42 U.S.C. § 1983. Section 1983 provides a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). To state a claim under 42 U.S.C. § 1983, Burch must establish: (1) that the Defendants violated a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation of said right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In claims brought under 42 U.S.C. § 1983, "qualified immunity shields government officials from liability and the burdens of litigation unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Carpenter v. Gage*, 686 F.3d 644, 648 (8th Cir. 2012). "Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). Burch alleges three violations of his rights under 42 U.S.C. § 1983: that the Defendants lacked probable cause to initiate the traffic stop, that the Defendants violated his right to record the traffic stop at issue in this lawsuit, and that the Defendants' use of force was excessive. For the following reasons, each of these claims must be dismissed on summary judgment.

a. <u>A violation of state traffic laws, no matter how minor, provides probable cause for an officer to initiate a traffic stop</u>.

Burch's contention that Officer Jordan Ehlers lacked probable cause to initiate the traffic stop at issue is without merit. "A traffic stop constitutes a seizure under the Fourth Amendment." *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008). "It is well established that a traffic

violation—however minor—creates probable cause to stop the driver of a vehicle." *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993); *see United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (citing same). It is a violation of Iowa Code § 321.314 to initiate a turn without an appropriate signal. *See* Iowa Code Ann. § 321.314 (West 2021).

The facts are clear that Officer Ehlers was asked by Investigator Berry to initiate a traffic stop in furtherance of Investigator Berry's meth investigation. Investigator Berry observed Burch commit numerous traffic violations, and informed Officer Ehlers of these observations. It is well-established that these traffic offenses gave Officer Ehlers probable cause to initiate the traffic stop. *See United States v. Mendoza*, 677 F.3d 822, 828 (8th Cir. 2012). The fact that Burch was not charged or cited with any crimes is irrelevant. The undisputed facts show the reason Burch was not charged for his conduct arising from the traffic stop was a discretionary decision made as part of the larger investigation being done by Tri-County Drug Task Force. *See* App. 011.

Burch will likely contend that he was detained longer than necessary to conduct a lawful traffic stop. Specifically, Burch alleges in his Complaint "that Defendants Ehlers and Scarbrough were intentionally prolonging the stop in order for a K-9 officer to arrive." *See* ECF No. 5. However, Burch ignores that the officers were justified in detaining him to conduct a limited investigation to effectuate the purpose of the stop. *Mendoza*, 677 F.3d at 828 (citing *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994)). "At a minimum, a reasonable investigation can include 'asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose.'" *Mendoza*, 677 F.3d at 828 (quoting *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005)).

When Officer Ehlers initiated the stop he conducted this reasonable investigation by asking for Burch's license, registration, where he had come from, where he was going, and proof of

insurance. App. 039, DVR No. ZZHDBW28 at 18:21:03-18:25:16. This limited investigation revealed that Burch did not have any insurance on the vehicle, a violation of Iowa Code § 321.20B(1)(a). Once Officer Ehlers discovered Burch did not have insurance on the vehicle he had probable cause to issue a citation against Burch; which the undisputed facts show he was doing during the traffic stop. Officer Ehlers was permitted to detain Burch while he completed the citation, checked Burch's driver's license, and checked the vehicle's registration. *Lyons*, 486 F.3d at 371 (citing *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999)). The videos in the record reflect that this process took approximately 15 minutes. App. 039, DVR No. ZZHDBW28 at 18:25:16-18:41:00. Officer Herkleman, the K-9 unit, had arrived by the time Officer Ehlers got out of his vehicle to speak with Burch about the citation. App. 006.

Burch will likely contend that Officer Ehlers unnecessarily prolonged his administrative tasks to ensure a drug dog arrived at the scene. Burch is correct that generally an officer must not prolong a traffic infraction longer than necessary. *See Lyons*, 486 F.3d at 371. However, an officer may prolong a routine traffic stop if they possess a reasonable suspicion that criminal activity is taking place. *Id.* "Reasonable suspicion exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (internal citations and quotations omitted). "When a team of law enforcement officers is involved in an investigation, the issue is whether all the information known to the team provided 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the investigative stop." *United States v. Winters*, 491 F.3d 918, 921 (8th Cir. 2007) (quoting *United States v. Robinson*, 119 F.3d 663, 666 (8th Cir 1997)).

The Defendants note that the undisputed facts show Officer Ehlers did not prolong the traffic stop to wait for Officer Herkleman. Moreover, Burch was transported to Covenant Medical Center before a dog sniff could even occur. If it is assumed, though, that Officer Ehlers was waiting for the K-9 unit to arrive on the scene before he went to discuss the citation with Burch, the evidence in the record reflects Officer Ehlers and the City of Waterloo Police Department had a reasonable suspicion to conduct the investigatory stop.

Here, Investigator Berry and other investigators received information from a reliable cooperating source that Burch possessed and was distributing meth in the Cedar Valley. *See* App. 009. This reliable cooperating source told Investigator Berry that Burch would be found driving a black BMW with paper plates. *See* App. 010. This cooperating source also said Burch was going to be participating in a drug deal at the Isle Casino. *See* App. 009-10. Investigator Berry then observed Burch leave the Isle Casino and get into a black BMW with paper license plates. App. 010. He then began following Burch. *Id.*

Burch noticed the investigators following him and began making evasive maneuvers on Washington Street to elude law enforcement. *See id.* Investigator Berry then contacted Officer Ehlers, informed him of the basis for his suspicion that Burch possessed drugs, and asked him to initiate a traffic stop. App. 004 & 010. Once Officer Ehlers initiated the traffic stop, he noted how Burch appeared anxious, and how Burch—who was marked as an escape risk—initially refused to put the vehicle in park. App. 005. When one reviews the totality of circumstances before the City of Waterloo Police Department, there was reasonable suspicion to conduct an investigation into whether Burch possessed drugs in the vehicle and the evidence shows the stop was not unreasonably prolonged in order for that investigation to occur. *See United States v. Riley*, 684 F.3d 758, 765-66 (8th Cir. 2012) (finding a nearly hour long wait for a drug dog did not

9

unreasonably prolong the stop); *Mendoza*, 677 F.3d at 828 (finding approximately 25-minute stop was not excessive); *Lyons*, 486 F.3d at 371-72 (finding 31-minute wait was not excessive in light of reasonable suspicion generated by officer during the stop).

Further, Burch's allegations ignore the reality that Officer Ehlers had the discretion to impound the vehicle—meaning Burch was likely never going to be allowed to leave with the vehicle after the issuance of the citation. Iowa Code § 321.20B provides police officers with discretion on what to do when a driver cannot provide proof of insurance. *See* Iowa Code Ann. § 321.20B(4)(a). One action a police officer may take is to "[i]issue a citation, remove the motor vehicle's license plates and registration receipt, and impound the motor vehicle." *Id.* at § 321.20B(4)(a)(4)(a). While it is unclear what Officer Ehlers planned on doing with Burch and the vehicle after he issued the citation, it was well within his authority under section 321.20B to detain and take possession of the vehicle once the traffic stop concluded. This would have prolonged Burch's interaction with law enforcement further, as Officer Ehlers would have needed to arrange a tow truck to pick up the vehicle and work out the details with Burch on Burch's transportation from the area.

The facts are clear. Burch was lawfully stopped for committing a routine traffic violation, but in addition, reasonable suspicion existed for the investigating officers to believe Burch possessed meth. During this traffic violation Burch admitted he did not have insurance on the vehicle. Officer Ehlers prepared a warning and citation for Burch, which took approximately 15 minutes. Under 8th Circuit precedent, this was not excessive in light of the circumstances. *See, e.g., Mendoza*, 677 F.3d at 828. As such, Burch's claim that the Defendants initiated the traffic stop without probable cause must be dismissed.

b. <u>The officers' use of force was reasonable under the circumstances.</u>

Burch further alleges that Officer Ehlers and Officer Scarbrough used excessive force during the course of the traffic stop and his subsequent arrest. Excessive force claims are analyzed "in the context of seizures under the Fourth Amendment, applying its reasonableness standard." *Brown*, 574 F.3d at 496. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006) (internal quotations and citations omitted).

The test is an objective one which requires the Court to determine whether the officer's actions were "objectively reasonable in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397. Relevant factors to the reasonableness of the officer's conduct include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396; *see Howard v. Kansas City Police Dep't*, 570 F.3d 984, 989 (8th Cir. 2009). The undisputed facts show the force used by the Defendants was reasonable under the circumstances.

Officer Ehlers went into this traffic stop aware of Burch's history as a flight risk. *See* App. 005. He was immediately put on guard of this risk when Burch did not immediately come to a full stop when pulled over. *See id.* When Officer Ehlers came back to Burch's vehicle with the traffic citations, he lawfully ordered Burch to get out of the vehicle to sign the citation. App. 006; *see*

11

*Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004) ("A law enforcement officer may order the driver out of a vehicle during a lawful traffic stop."). Burch continually refused this command, leading Officer Ehlers to open the driver's side door. App. 006. It was at this time that Burch put his foot on the brake and reached for the shifter in the center console. *See id.*

Observing Burch do this, Officer Ehlers grabbed for the keys to keep Burch from fleeing the scene. *Id.* He then proceeded to remove Burch from the car. *Id.* During this struggle he observed Burch reach toward his waist and put what appeared to be a bag with a white object into his mouth. *Id.* Based on his training and experience, Officer Ehlers recognized the white substance as meth. *Id.*

Officer Ehlers then heard Burch chewing on the meth. *Id.* He realized Burch was eating the meth. *Id.* From his training and experience, Officer Ehlers was concerned that the amount of meth Burch was consuming—which Officer Ehlers estimated to be roughly half an ounce—could potentially kill him. *Id.* Due to the large amount of meth Burch ingested, Officer Ehlers deployed two bursts of his OC spray to Burch's face. App. 007. Officer Ehlers hoped the OC spray would cause Burch to spit out the meth. *Id.*

While this happened, Burch continued to resist as Officers Herkleman, Scarbrough, and Ehlers attempted to place Burch's arms behind his back. *Id.* Burch was larger than all of the officers on the scene. *Id.* Officer Ehlers was also aware, from his training and experience, that those under the influence of meth can be extremely strong and violent. *Id.* As Burch continued to reach towards his waist band (where he originally pulled the meth from), Officer Ehlers struck him near the shoulder in an attempt to gain control of Burch's arm. *Id.*

The use of force was reasonable in light of the circumstances. *See Lawyer*, 361 F.3d at 1105. Defendants' expert witness Ken Wallentine states that the use of a distraction strike, like the

one employed by Officer Ehlers, was reasonable under the circumstances: "The use of distraction strikes is commonly taught to officers as a technique to interrupt a subject's efforts to resist and escape. A reasonable and well-trained officer would have recognized that a closed fist distraction blow was a reasonable option to attempt to gain control over plaintiff." App. 024. Similarly, Wallentine also felt Officer Ehlers' use of pepper spray was reasonable under the circumstances:

> Officers are trained in the use of oleoresin capsicum spray, also referred to as "OC" or "pepper" spray. Officers are taught that it is an effective and safe tool to subdue combative and violent subjects, with an extremely low probability of lasting effects. Officers are taught that pepper spray does not result in pulmonary dysfunction, respiratory compromise or increased risk of injury for respiratory arrest. Many officers carrying pepper spray have been sprayed with it during a training exposure and they have first-hand knowledge of its effects and the recovery period. A reasonable and well-trained officer familiar with pepper spray would have recognized that pepper spray was a reasonable option that would produce only temporary irritation and may well have prompted plaintiff to spit out the baggie of drugs in his mouth.

App. 024-25.

The officers in this case were facing an individual, Burch, who was resisting them after he ingested a large quantity of meth. In an effort to try to get him to spit out this meth, Officer Ehlers used his pepper spray. In an effort to subdue Burch, Officer Ehlers made a single closed fist strike. These limited uses of force were reasonable to attempt to get the situation under control. Under the totality of the circumstances, the use of force by the officers was reasonable and not a violation of Burch's rights; thus, his excessive force claim should be dismissed.

    c.    <u>Burch's right to record the traffic stop was not violated because the Defendants did not take any adverse action against Burch for filming the traffic stop</u>.

Burch further alleges that the conduct of the Defendants was retaliation for his recording of the traffic stop. A person has the right to record police activity in public. *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020) (collecting cases). A police officer who retaliates against an individual who is exercising this right is not entitled to qualified immunity. *See Walker v. City of*

13

*Pine Bluff*, 414 F.3d 989, 992-93 (8th Cir. 2005). When reviewing 8th Circuit precedent on this issue, it is evident that Burch is not entitled to relief based on an alleged violation of his right to record.

To show that he is entitled to relief Burch must show that Officers Ehlers and Scarbrough's conduct was motivated by his recording of the proceeding. In each of the cases denying qualified immunity based on this right, the sole reason the officer engaged the plaintiff was because the plaintiff recorded or observed the police. *See Chestnut*, 947 F.3d at 1090; *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 983-84 (8th Cir. 2019) (denying qualified immunity against an officer who arrested a man for shouting an obscenity during a traffic stop); *Hoyland v. McMenomy*, 869 F.3d 644, 654-55 (8th Cir. 2017) (denying qualified immunity for an officer who arrested a man who only watched officers arrest his wife and shouted at them); *Walker*, 414 F.3d 989 at 992-93 (denying qualified immunity for an officer who arrested an attorney who stopped to watch a traffic stop).

In *Chestnut*, for instance, qualified immunity was denied when an officer detained an individual who was only observing another police officer. *See* 947 F.3d at 1090. There, Kevin Chestnut stopped to watch a police officer perform a series of traffic stops. *Id.* at 1087. His presence caught the officer's attention. *Id.* The officer radioed dispatch and a second officer arrived at the scene. *Id.* This officer got out of his car, stopped Chesnut, and put him in handcuffs after Chesnut failed to provide some identifying information to the officer. *Id.* Chestnut was released from the handcuffs only after the supervising officer arrived on scene. *Id.* at 1087-88. Chestnut was not accused of breaking any laws. *Id.*

Burch cannot say he was merely observing the Defendants before he was detained, nor can he say that any of the Defendants' conduct was related to his recording of the traffic stop. Officer

14

Ehlers initiated the stop after Burch committed a traffic violation. App. 010. Officer Scarbrough then stood by and watched Burch as Officer Ehlers prepared the traffic citation. App. 001. Although Officer Scarbrough did discuss his preference of not being recorded, he did not do anything in response to being recorded. App. 039, DVR No. ZHDBW30 at 18:28:19-18:28:55. Burch was already being detained for the traffic violation. Officer Scarbrough did not place Burch under arrest for recording him, nor did Officer Scarbrough use any force in response to being recorded. *See Id.* All of the actions taken by the Defendants were a lawful response to Burch's other conduct during the traffic stop. Under 8th Circuit precedent on the right to record, Burch needed to show he was retaliated against for exercising his right to record—a showing he cannot make.

III. THE DEFENDANTS ARE ENTITLED TO STATUTORY IMMUNITY FOR BURCH'S SOLE STATE LAW CLAIM OF BATTERY.

Burch's final claim is one for state common law battery. The Defendants are immune from liability for this claim. Iowa Code § 670.4 provides immunity to a municipality for:

> Any claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

Iowa Code Ann. § 670.4(4). Officers and employees are not liable for any claims which are exempted under section 670.4. *See id.* at § 670.12.

In Iowa, an officer is allowed to use an amount of force that the "officer would be justified in using if the officer . . . were arresting such person." *Id.* § 804.13; *see Parrish v. Dingman*, 912 F.3d 464, 469 (8th Cir. 2019). To make an arrest, an officer can use "any force which . . . the officer reasonably believes to be necessary to effect the arrest." *Id.* at § 804.8; *see Parrish*, 912

15

F.3d at 469. Any use of physical force is subject to the standard of reasonableness under the Fourth Amendment. *See State v. Dewitt*, 811 N.W.2d 460, 468 (Iowa 2012).

When the force reviewed does not amount to excessive force for a 42 U.S.C. § 1983 claim, federal courts have routinely found that the officers are entitled to immunity for similar state common law claims. *See Parrish*, 912 F.3d at 469 (dismissing plaintiff's state claims when the use of force was objectively reasonable); *Daniels v. Tyler*, 56 F. Supp. 3d 967, 974 (N.D. Iowa 2015) ("If [the defendant] enjoys 'qualified immunity' to a claim of unconstitutional use of 'excessive force,' he also enjoys the immunity provided by Iowa Code § 808.4 to a state-law claim of 'assault.'"); *Dooley v. Tharp*, No. 3:14-cv-116-HCA, 2015 WL 13547530, at *6-7 (S.D. Iowa Aug. 31, 2015) (granting immunity when use of force was reasonable); *Lawyer v. City of Council Bluffs*, 240 F. Supp. 2d 941, 955 (S.D. Iowa 2002) ("[A] police officer is not liable for assault and battery in connection with a use of force he or she is statutorily authorized to employ."); *but see Burnikel v. Fong*, No. 4:15-cv-00050-JAJ, 2016 WL 11597922, at *9 (S.D. Iowa Oct. 12, 2016) (declining to grant immunity under section 670.4 when there was a question of fact as to whether the officer used excessive force). As the use of force deployed here was reasonable, for the reasons more thoroughly set forth above, the Defendants are entitled to immunity for Burch's state law claim.

## CONCLUSION

For the reasons more thoroughly set forth above, Defendants City of Waterloo, Jordan Ehlers, Lucas Scarbrough, and Adam Galbraith move this Court to grant their motion for summary judgment and dismiss all claims against them as Plaintiff Cash Burch is unable to show any of his constitutional or statutory rights were violated during the June 21, 2017 traffic stop and, as such, he is not entitled to relief.

Respectfully submitted,

REDFERN, MASON, LARSEN & MOORE, PLC


By: /s/Bruce L. Gettman, Jr.
    Bruce L. Gettman, Jr.    AT0002724
    Email: bgettman@cflaw.com


By: /s/Bradley M. Strouse
    Bradley M. Strouse    AT0009732
    Email: strouse@cflaw.com

    415 Clay Street, P.O. Box 627
    Cedar Falls, Iowa 50613
    Phone: (319) 277-6830
    Fax: (319) 277-3531

*Attorneys for Defendants City of Waterloo, Jordan Ehlers, Lucas Scarbrough and Adam Galbraith*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

    Webb L. Wassmer
    Wassmer Law Office PLC
    5320 Winslow Road
    Marion, IA 52302
    wassmerlaw@yahoo.com


  REDFERN, MASON, LARSEN & MOORE, P.L.C.

By: /s/ Bruce L. Gettman, Jr.